UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT E. TUCKER, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:03-CV-057 RM |
| ) | |
| SAINT JOSEPH CARE CENTER, ) | |
| ) | |
| Defendant ) | |

OPINION and ORDER

On February 28, 2003, Mr. Tucker filed a complaint against the Saint Joseph Care Center alleging that it violated The Age Discrimination in Employment Act, 29 U.S.C. § 621, by terminating his employment. St. Joseph Care Center and Mr. Tucker both have filed motions for summary judgment. For the following reasons, the court grants St. Joseph's motion and denies Mr. Tucker's motion.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). There is no genuine issue of material fact when a rational trier of fact could not find for the

nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in its favor. Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004); *see also* Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003) ("As we have said before, summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" (*quoting* Schacht v. Wisconsin Dep't of Corr., 175 F.3d 497, 504 (7th Cir. 1999)).

> [T]he plain language of Fed. R. Civ. P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element with respect to which she has the burden of proof.

Celotex v. Catrett, 477 U.S. 317, 322-23 (1986). Mr. Tucker represents himself, but the standard for reviewing a summary judgment motion is the same regardless of whether a party was represented by counsel. Outlaw v. Newkirk, 259 F.3d 833, 836-837 (7th Cir. 2001).

Mr. Tucker did not respond to St. Joseph's Statement of Material Facts, so the facts set out by St. Joseph's are assumed to be true. "In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file." N.D. IND. R. 56.1(b). That St. Joseph's recitation of the facts is unchallenged does not automatically make summary judgment appropriate. FED. R. CIV. P. 56(e). St. Joseph's still must show itself to be entitled to judgment under the law. For the reasons that follow, the court finds St. Joseph's has done so.

The uncontroverted facts of this case are as follows. Mr. Tucker worked for Holy Cross for two years as a float staff licensed practical nurse where he filled in for full-time LPNs at each of Holy Cross's nursing home facilities around South Bend before St. Joseph's hired him as a full-time LPN on or about September 14, 1994. Mr. Tucker served briefly

3

as a unit manager, but for most of his time with St. Joseph's he was a LPN (also known as a staff nurse). Mr. Tucker performed a variety of tasks for the residents as a staff nurse, such as administering medication, charting day-to-day assessments, tending to wound treatments, and occasionally bathing and feeding them.

The administration of medication to residents at St. Joseph's was governed by a policy known as the medication policy and was supplemented by a policy specifically regarding the administration of controlled substances. These policies were enacted to minimize the margin of error in the administration of medication to the residents. Mr. Tucker was familiar with these policies. The medication policy referred to the use of the medication administration record that contained the current medication orders that a resident must receive for a particular month. The medication administration record also was used to keep track of what medications were actually administered and by whom. Once the medication was administered to a particular resident, the medication policy required the nurse to sign his or her initials on the medication administration record next to the medication. If no initials appeared next to the medication, or the space for the nurse's initials was circled, St. Joseph's interpreted that to mean that the medication was not given. A failure to administer medication according to the medication

4

policy is deemed a "medication error" and may result in discipline and consultation regarding the policy with the nurse responsible.

Mr. Tucker's performance during his employment at St. Joseph's was governed by a code of conduct, which was part of the Holy Cross employee handbook. The handbook provided an explanation of level I and level II code of conduct violations and examples of each type of violation. A level I offense could result in immediate dismissal without prior warning.

On November 28, 2001, Mr. Tucker received a written warning for not following the medication policy. He had left blank spaces on a resident's medication administration record even though he administered the medication to the resident. His actions resulted in a code of conduct level II offense: failure to meet reasonable work standards. On Mr. Tucker's written warning, Mary Molnar, former St. Joseph's RN and Unit 1 Manager, expressly reminded him that: "Medications are to be charted at the time the medication is administered to the resident." In response Mr Tucker wrote: "I agree the stated policy is definitely what I should have followed. Over half of the meds were signed. I will make every effort to follow the letter."

Three months later, Mr. Tucker again failed to follow the policy, but this time he signed his initials next to medications he did not administer. On February 28, 2002, Mr. Tucker was sitting at the nursing

station charting when he was approached by Wendy Meller, RN and Karen Ogden, a Consultant Pharmacist formerly stationed at St. Joseph's, who asked him whether he knew anything about holes in a medication administration record which they handed to him. There were about six holes on the medication administration record that spanned a couple of days' time and were from two weeks earlier. Mr. Tucker responded, "I'll fix that," initialed all the spaces, and said "it was taken care of." He did this although some holes were from days he was not working. Immediately after Mr. Tucker initialed the holes, Ms. Ogden told him that he couldn't do that and that she knew that he didn't work on some of those days. Mr. Tucker offered to circle the doses that he didn't administer, but Ms. Ogden wouldn't allow him to do so. Later that day, Mr. Tucker located the medication administration record again and proceeded to circle each of his initials next to medications he didn't administer. Mr. Tucker says he did this as a means of correcting his mistake.

Corrected or not, the actions of Mr. Tucker constituted a code of conduct level I offense: falsification of a medical document. Because of this offense, Marlene Lisek, former Director of Nursing, and Rose Ann Antkowiak, Former Administer, decided to terminate Mr. Tucker. Mr. Tucker appealed his termination to Jack Cormack, Regional Human Resources Manager, and Lisa Mininni, Vice President of Human

Resources. Upon their review of the surrounding circumstances, the termination was upheld.

Mr. Tucker claims that he was terminated not because of his "mistake", but because of his age (53 at the time in question).

The Age Discrimination in Employment Act's purpose is "to prohibit arbitrary age discrimination in employment." 29 U.S.C. § 621(b). To prevail on an age discrimination claim, a plaintiff must show either direct evidence of discriminatory motive or intent or rely on the indirect burden-shifting method outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). The direct method requires "providing direct evidence, such as an 'outright admission' of discrimination, or by presenting sufficient circumstantial evidence. But such circumstantial evidence must point directly to a discriminatory reason for the termination decision." Ptasznik v. St. Joseph Hospital, 464 F.3d 691, 695 (7th Cir. 2006).

Mr. Tucker argues that comments heard by Diana Jackson, a former certified nursing assistant and activity director at St. Joseph's, provide proof of age discrimination. Ms. Jackson says that in July 2003 she overheard Ms. Antkowiak respond to a comment that someone was biding her time until retirement with: "Well why are you letting her (retire)? Don't you know, you never let them retire. You get rid of them first. Letting them retire cost us money in benefits. You never let them

retire." Ms. Jackson then states that a few months later she again met with Ms. Antkowiak to discuss department cutbacks and she suggested that Ms. Jackson get rid of her staff and bring in an all new staff. Ms. Jackson felt that this suggestion was motivated by the fact that her staff had between 5 and 18 years in the company and were fully vested. Ms. Jackson didn't follow this suggestion and Ms. Antkowiak placed her on a 30-day probationary period a few months later. Soon after this probation, Ms. Jackson voluntarily resigned.

  St. Joseph's responds by noting that this comment was made 17 months after Mr. Tucker's termination and so is hardly direct evidence of a discriminatory motive. Mr. Tucker also vested in St. Joseph's retirement plan in 1995, so a desire to keep his benefits from vesting could not have motivated his firing. Additionally, an employer's intent to terminate employees before their pension benefits vest in order to prevent their pension benefits from vesting is a claim under § 510 of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1140, and Mr. Tucker has not made such a claim. Lastly, the Court of Appeals has stated that "an impending vesting — based on years of service, not age — was not material to an age discrimination claim." Swanson v. Leggett & Platt, Inc., 154 F.3d 730, 738 (7th Cir. 1998) (relying on Hazen Paper Co. v. Biggins, 507 U.S. 604 (1993)).

For these reasons, Ms. Jackson's declaration provides no direct evidence of age discrimination and does not provide the circumstantial evidence the direct method requires. Mr. Tucker, then, must proceed to establish discrimination using the indirect method of proof established by McDonnell Douglas. To establish a *prima face* case under this framework, Mr. Tucker must show that he: (1) was over 40 years old; (2) was meeting legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than younger similarly situated employees. Griffin v. Potter, 356 F.3d 824, 828 (7th Cir. 2004). At a minimum, he must demonstrate a triable issue as to each element in order to survive summary judgment. Id. If Mr. Tucker can prove a prima facie case, the burden of production shifts to St. Joseph's to show legitimate, non-discriminatory reasons for its actions. Johal v. Little Lady Foods, Inc., 434 F.3d 943, 946 (7th Cir. 2006).

Mr. Tucker has shown that he is a member of a protected class and suffered an adverse employment action, but he can't fulfill the other two elements. St. Joseph's has pointed to two incidents where Mr. Tucker failed to meet legitimate job expectations, and these provide justification for his termination. The first incident occurred when Mr. Tucker didn't initial the holes in the medication administration record next to medications he administered to a resident. Mr. Tucker was written up for a level II code of conduct offense: failure to meet

reasonable work standards, given a written warning, and counseled on the proper procedure for the use of medication administration records in administering medication. Mr. Tucker's written response to this reprimand was: "I agree the stated policy is definitely what I should have followed. Over half of the meds were signed. I will make every effort to follow the letter."

The second incident was a more serious infraction. When Ms. Meller and Ms. Ogden confronted him about holes in a medication administration record, Mr. Tucker initialed even the holes that were left blank on days that he wasn't working. When Ms. Meller and Ms. Ogden pointed this out, Mr. Tucker offered to circle those holes that were not his, but they refused his offer. Mr. Tucker later located the medication administration record and circled the initials next to medications he didn't administer. Mr. Tucker doesn't deny this incident, but says it was a mistake and not the falsification of a medical record, a level I code of conduct violation.[1] A plaintiff's subjective beliefs, however, are insufficient to create a genuine issue of material fact. McMillian v. Svetanoff, 878 F.2d 186, 190 (7th Cir. 1989). In light of the two

---

[1] In Mr. Tucker's reply, he questions why Ms. Ogden and Ms. Meller brought him the medication administration record sheet in the first place since, he argues, this was not the normal procedure in which to conduct an investigation as to holes in a medication administration record. His puzzlement does not change that he admitted to leaving holes and then filling in ones for days he did not work. This conduct constituted a level I violation and provided justification for his termination. Mr. Tucker does not argue that there was any age-related motive behind Ms. Ogden and Ms. Meller's conduct.

10

incidents, no reasonable trier of fact could find that Mr. Tucker was meeting legitimate job expectations.

Mr. Tucker has also not come forth with evidence sufficient to show he was treated less favorably than younger similarly situated employees. "Employees are similarly situated if they are directly comparable in all material respects." Raymond v. Ameritech Corp., 442 F.3d 600, 610 (7th Cir. 2006). In evaluating whether two employees are similarly situated:

> the court must look at all relevant factors, including whether the employees '(i) held the same job description, (ii) were subject to the same standards, (iii) were subordinate to the same supervisor, and (iv) had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision.'

Bio v. Federal Express Corp. 424 F.3d 593, 597 (7th Cir. 2005) (*quoting* Ajayi v. Aramark Bus. Servs., Inc., 336 F.3d 520, 532 (7th Cir. 2003)). Mr. Tucker must also show that the similarly situated employee was "substantially younger," meaning that "the relevant individual must be at least ten years younger than the plaintiff." Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000).

Mr. Tucker contends that Ms. Molnar was similarly situated to him, but treated more favorably since she was not terminated after she left holes in a medication administration record. St. Joseph's counters that Mr. Tucker wasn't terminated for leaving holes in a medication

administration record, but was terminated for initialing holes for medications he didn't administer: in other words, falsifying medical records. Mr. Tucker and Ms. Molnar also held different positions and as a unit manager, Ms. Molnar didn't normally administer medications as Mr. Tucker did; she was doing so on the date in question only because another staff nurse called off. Finally, since Ms. Molnar was 45 years old on the date Mr. Tucker was terminated, she cannot meet the "substantially younger" requirement.

Mr. Tucker also says he was replaced by 47-year-old Mildred Bowen.[2] To establish a prima facie case of age discrimination Mr. Tucker must show he was replaced by someone substantially younger. Grimm v. Alro Stell Corp, 410 F.3d 383, 386 (7th Cir. 2005). Ms. Bowen, only six years younger than Mr. Tucker, cannot satisfy the "substantially younger" requirement. Radue v. Kimberly-Clark Corp., 219 F.3d 612, 619 (7th Cir. 2000). For the reasons stated above, Mr. Tucker has not shown that he was treated less favorably than a younger similarly situated employee.

For these reasons, the court GRANTS St. Joseph Care Center's motion for summary judgment (Doc. No. 58), and DENIES AS MOOT Mr. Tucker's motion for summary judgment (Doc. No. 65).

---

[2] In Mr. Tucker's reply, he also mentions a request for the production of documents related to Delores Devaraux that was denied by counsel.  It appears that this request was made after the time for discovery was closed, and Mr. Tucker has not stated how this document would bolster his case.

SO ORDERED.

ENTERED:  July 2, 2007

    /s/ Robert L. Miller, Jr.
Chief Judge
United States District Court